UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
CARLOS DOMINGUEZ,                 )
                                  )
                 Petitioner,      )
                                  )
        v.                        )        CIVIL ACTION
                                  )        NO. 10-12138-WGY
RONALD DUVAL,                     )
Acting Commissioner, Department of )
Corrections,                      )
                                  )
MARTHA COAKLEY,                   )
Attorney General,                 )
                                  )
                 Respondents.     )
                                  )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    March 30, 2012

I.   INTRODUCTION AND PROCEDURAL HISTORY

     After a 2006 trial in the Massachusetts Superior Court,

sitting in and for the county of Suffolk, a jury convicted Carlos

Dominguez ("Dominguez") of second-degree murder and the judge

presiding sentenced him to life in prison.  Pet. Writ Habeas

Corpus Pursuant 28 U.S.C. § 2254 ("Habeas Pet."), Mem. Decision

Def.'s Mot. New Trial ("Superior Ct. Decision") 1, ECF No. 1-1.

Dominguez filed a timely appeal of his conviction, arguing that

the Justice of the Superior Court erred in admitting evidence

from an autopsy report even though the author of the report did not testify in court, and in refusing to give a requested jury instruction. Habeas Pet., Mem. Order Pursuant Rule 1:28 ("Appeals Ct. Decision") 3, ECF No. 1-1. On July 17, 2009, the Appeals Court affirmed the conviction. Id. at 8. On September 10, 2009, the Supreme Judicial Court denied his Application for Further Appellate Review. Habeas Pet., Notice Denial F.A.R. Application ("Supreme Judicial Ct. Denial"), ECF No. 1-1. Dominguez did not petition for a writ of certiorari with the United States Supreme Court. Habeas Pet. 4.

Dominguez also moved for a new trial based on alleged newly discovered evidence, which a different Superior Court justice denied without an evidentiary hearing in 2008. Superior Ct. Decision 2. The Appeals Court affirmed the denial. Appeals Ct. Decision 8.

Dominguez filed a writ of habeas corpus in this Court on December 10, 2010, under 28 U.S.C. § 2254. Habeas Pet. 2. Dominguez asks this Court to vacate his conviction and order a new trial. Id. at 16.

Respondents Ronald Duval, then Acting Commissioner of the Massachusetts Department of Corrections, and Martha Coakley, Massachusetts Attorney General, moved to dismiss Dominguez's habeas petition as untimely. Resp't's Mot. Dismiss 1, ECF No. 5; Resp't's Mem. Law Supp. Mot. Dismiss Pet. Writ Habeas Corpus

2

Time-Barred ("Resp't's Mem.") 1, ECF No. 6. Dominguez argues that the petition was not time barred or, in the alternative, the statute of limitations should be equitably tolled and therefore his petition should be considered timely. Pet'r's Reply Mot. Dismiss 1, ECF No. 8; Mem. Law Supp. Pet'r's Reply ("Pet'r's Mem.") 1-2, ECF No. 9. On January 9, 2012, this Court ordered the parties to submit supplemental briefs in order better to establish the factual record. Order, ECF No. 14. Dominguez filed a supplemental brief on February 13, 2012. Supplemental Br. 1, ECF No. 17. The Attorney General failed to submit a timely response to the Court's request.[1]

Specifically, Dominguez argues that when his attorney originally mailed the habeas petition to the prison where he is currently detained, the prison rejected the mail properly addressed to him and returned it to the attorney unopened. Pet'r's Mem. 2. The attorney resent the paperwork, Dominguez signed the relevant documents, and the attorney subsequently filed the petition with this Court one day after the filing deadline. Id. Dominguez now argues that his petition would have been timely filed but for the prison's failure to deliver his

---

[1] Ironically the Attorney General is asking this Court to dismiss Dominguez's habeas petition because it was filed one day after the deadline, yet the Attorney General did not timely respond to the Court and filed supplemental briefs thirty four days after the deadline. Electronic Order, March 15, 2012 (denying motion for extension of time to March 14, 2012 to file memorandum in response to Court order dated January 9, 2012).

mail.  <u>Id.</u>

## II.  FACTS

The Court divides the facts that govern its analysis into three sections: first, the events underlying Dominguez's conviction; second, the facts pertaining to the timeliness of Dominguez's habeas petition; and third, the facts pertaining to the merits of Dominguez's habeas petition.

### A.  Events Underlying the Conviction

The Appeals Court stated that "Based on the evidence at trial, the jury could have found as follows."  Appeals Ct. Decision 1.  A witness living on the second floor of a building on 96 Grove Street heard screams at 4:30 A.M. on January 2, 2004. <u>Id.</u>  The witness looked out his window and saw the victim "being chased by two Hispanic males."  <u>Id.</u> at 1-2.  The witness did not see any altercation, but he saw the two males chase the victim from 92 Grove Street to the corner of Highland and Grove Streets. <u>Id.</u> at 2.

Paramedics responded to a report of a "man down" at 5:30 A.M. and found the victim lying next to the curb.  <u>Id.</u>  The victim died at the scene.  <u>Id.</u>  The cause of death was a wound on his right shoulder, which was "covered in a large amount of blood."  <u>Id.</u>  "A trail of blood led from 92 Grove Street to his body, traveling up Grove Street and curving right onto Highland Street."  <u>Id.</u>

4

On January 4, 2004, the police interviewed Dominguez.  Id. After giving two different accounts, Dominguez blurted out "'I did it'" and gave a version of the events where the victim had initiated the altercation by trying to hit Dominguez with a stick.  Id.  According to Dominguez, Dominguez ran around a parked car and pulled out a knife.  Id.  After the victim lunged at Dominguez, Dominguez "cut" the victim.  Id.  The Appeals Court stated that a police search of Dominguez's apartment revealed the clothes Dominguez was wearing that night, "hidden behind the refrigerator and covered in [the victim's] blood."  Id. at 2-3. Dominguez argued at trial that his statement admitting guilt was unreliable or that he had acted in self-defense when stabbing the victim.  Id. at 3.

**B.  The Habeas Petition's Transit**

On November 23, 2010, Dominguez's attorney, Deirdre Thurber ("Thurber"), mailed two sets of completed habeas petitions to Dominguez, who was being housed in the Northern State Prison in Newark, New Jersey.  Aff. Counsel ("First Aff.") ¶ 5-6, ECF No. 10; Pet'r's Mem. 2.  Thurber asserts that she used "the same address [she] had always used" for the previous correspondences on November 23.  First Aff. ¶ 6.  The envelope with the petition was returned unopened.  Id. ¶ 7.  She further asserts that no previous correspondence had been returned to her.  Aff. Counsel ("Second Aff.") ¶ 2, ECF No. 17-1.  Thurber asserts that there is

no indication why the address was insufficient, and that she
included the same identification number (SBI number) that she had
always used in her correspondences with Dominguez but was
rejected for this submission.  First Aff. ¶¶ 10-11; Second Aff. ¶
2.

Thurber resent the envelope containing the additional
identifying information she received from the prison
administration, including a longer SBI number with the string "-
612096" and the specific wing of the prison where Dominguez was
housed, but Thurber asserts that all previous correspondences
lacked this additional identifying information.  Second Aff. ¶¶
2-3; see Second Aff., Ex., ECF No. 17-2 (showing previous
correspondence with Dominguez that used the address Thurber put
on the November 23 envelope).

There are several discrepancies in the affidavits submitted
to the Court regarding the timing of the returned envelope.
Thurber's first affidavit states that she received the returned
envelope on December 2, 2010, and that the envelope was unopened
and marked "RTS" (i.e. Returned to Sender) and "Insufficient
Address."  First Aff. ¶ 7; Id., Ex. at 2, ECF No. 10-1.  Her
second affidavit, however, states that the envelope was returned
to her on December 3, 2010.  Second Aff. ¶ 3.

The first affidavit states that she received the returned
envelope "after normal operating hours for administrative

6

personnel," so she was unable to call the administration office of the Northern State Prison to confirm Dominguez's inmate status until the following day, December 3. First Aff. ¶ 10. According to the second affidavit, since the date of receipt was December 3, a Friday, and Thurber received the envelope "after the close of business hours," she needed to wait until Monday, December 6, 2010, to call the prison. Second Aff. ¶ 3.

According to the first affidavit, upon learning that Dominguez was still housed at Northern State Prison, Thurber mailed the habeas petitions that same day, December 3, by express mail. First Aff. ¶ 12. The receipt from the United States Postal Service submitted with the first affidavit confirms that a package was mailed to Dominguez on December 3, 2010 at 9:48 A.M. First Aff., Ex. at 3. Contradictorily, the second affidavit states that she mailed the petitions to Dominguez on December 6. Second Aff. ¶ 3. Although there are discrepancies as to when Thurber received and re-mailed the petitions, it appears that she subsequently received the petitions with Dominguez's signature on December 8, 2010. First Aff. ¶ 13.

Thurber completed the paperwork and mailed it by certified mail to the Clerk of the United States District Court for the District of Massachusetts on December 9, 2010. Id. The petition was filed and docketed on December 10, 2010. ECF No. 1.

C.   The Habeas Claims

7

Dominguez presents two grounds in his petition of habeas corpus. Habeas Pet. 6, 8. The first ground claims a violation of his Sixth Amendment Confrontation Clause rights. Id. at 6; see Melendez-Diaz v. Massachusetts, 557 U.S. 305, ---, 129 S. Ct. 2527, 2536-38, 2542 (2009). The second ground claims that prosecutors withheld certain evidence which would have aided in his defense, a violation of his Fourteenth Amendment Due Process rights. Habeas Pet. 8 (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)).

## 1. Confrontation Clause Violation

Dominguez states that an autopsy was performed on the victim by Dr. Abraham Philip ("Dr. Philip").[2] Id. at 6. Dr. Mark Flomenbaum ("Dr. Flomenbaum"), however, testified at trial rather than Dr. Philip. Id. Dominguez states that Dr. Flomenbaum testified about the autopsy, its findings and results, and the cause of death as determined by the autopsy, yet Dr. Flomenbaum was never present when the autopsy was conducted. Id. Dr. Philip was not called as a witness. Id. Dominguez objected to Dr. Flomenbaum's testimony at trial, but the objection was overruled. Id. Dominguez also objected to the prosecution introducing the autopsy report as evidence, and this objection was overruled as well. Id.

---

[2] Dominguez lists the doctor's name as "Phillips" but the Massachusetts Appeals Court listed the name as "Philip." See Appeals Ct. Decision 3.

The Massachusetts Appeals Court held that Dr. Flomenbaum's testimony and the autopsy report were admitted erroneously, but the Commonwealth demonstrated that the admittance of both the doctor's testimony and the autopsy report was harmless beyond a reasonable doubt, and that "[Dominguez] does not seriously contend otherwise." Appeals Ct. Decision 3-4. "The autopsy report consisted entirely of cumulative or insignificant data." Id. at 4. The victim's death had been independently established by a death certificate. Id. The autopsy report listed a stab wound to the victim's right shoulder, but the cause of the victim's death "was not in dispute and was supported by properly admitted photographs of the victim." Id. The autopsy report's additional content was "inconsequential" as it contained "notations about the victim's height and weight, the weight of various organs, and the positions of the identifying marks." Id. at 4-5.

Dr. Flomenbaum's testimony was limited to the "four corners" of the autopsy report. Id. at 3 n.1 (citation to court transcript omitted). Dominguez argued on appeal that cross-examining Dr. Philip would have allowed Dominguez to ask whether the victim's injuries were consistent with Dominguez's version of events, and that Dr. Philip could have made "additional observations" not listed in his autopsy report. Id. at 4 n.2. The Appeals Court concluded that the "unfounded speculations

about Dr. Philip's testimony do not meet the harmless error standard" and that Dominguez could have subpoenaed Dr. Philip in order to elicit testimony from him. Id. The Supreme Judicial Court denied an Application for Further Appellate Review. Supreme Judicial Ct. Denial.

## 2. Due Process Claim

Dominguez's second claim is that the prosecutors withheld evidence in violation of the Due Process Clause. Habeas Pet. 8. This evidence relates to the victim's son who was prosecuted by the Suffolk County District Attorney and pleaded guilty to a gang-related murder several months before the victim's deadly encounter with Dominguez. Id.; Appeals Ct. Decision 7; Superior Ct. Decision 1. The same District Attorney also prosecuted Dominguez and the District Attorney was "aware, through pre-trial motions, that the defense was searching for an explanation of the victim's actions." Appeals Ct. Decision 7. Dominguez states that the victim's belief that Dominguez was also a gang member would provide an explanation for an "unprovoked attack" on Dominguez and therefore strengthen Dominguez's claim of self-defense. Id.

Dominguez previously raised this issue through a motion for a new trial in the Superior Court. Superior Ct. Decision 1. The Superior Court surmised that Dominguez "speculat[ed]" that had he known of the victim's son's conviction, he could have argued that

the reason for the victim attacking him was that the "victim may have thought that [Dominguez] was a rival gang member who may have been partially responsible for [the victim's] son's incarceration." Id. The Superior Court concluded that there was nothing to support Dominguez's theory and that "it was unlikely to have had any impact on the jury." Id. The court further stated that the "newly discovered evidence" was unrelated to Dominguez's case and raised no substantial issue, so the court denied the motion without a hearing. Id. at 1-2.

The Appeals Court affirmed the denial of the motion for a new trial. Appeals Ct. Decision 8. The Appeals Court also noted that the motion judge, who was not the trial judge, "did not abuse his discretion in denying the motion without an evidentiary hearing, as 'no substantial issue [was] raised by the motion or affidavits.'" Id. at 7-8 (quoting Commonwealth v. Candelario, 446 Mass. 847, 858 (2006)). The Appeals Court added that although Dominguez argued he would have conducted discovery differently and asked witnesses different questions had he known of this conviction, there was no evidence or affidavit showing that Dominguez's efforts would have been successful. Id. at 8 n.5. The Supreme Judicial Court subsequently denied an Application for Further Appellate Review on the matter. Supreme Judicial Ct. Denial.

## III. FEDERAL JURISDICTION

A United States District Court must entertain applications for the writ of habeas corpus from persons who assert that they are in state custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A habeas petitioner must first exhaust the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A).

Dominguez asserts that he has complied with the exhaustion requirement by presenting all grounds for relief to the highest Massachusetts court, the Supreme Judicial Court. See Habeas Pet. 3-4. Judge Gertner, previously assigned to this case, requested filings from respondents Duval and Coakley concerning whether Dominguez had exhausted available state remedies, but no such filings were made. See Order, ECF No. 4. The exhaustion requirement cannot be waived implicitly, but only by express state government waiver through counsel. 28 U.S.C. § 2254(b)(3).

IV. **ANALYSIS**

A. **The General Habeas Corpus Framework**

Courts may grant habeas petitions for state prisoners only if their custody is the result of "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by Supreme Court precedent, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is contrary to

12

clearly-established precedent "if it applies a rule that
contradicts the governing law set forth in our cases, or if it
confronts a set of facts that is materially indistinguishable
from a decision of this Court but reaches a different result."
Brown v. Payton, 544 U.S. 133, 141 (2005) (citations omitted).
When reviewing a state court decision under 28 U.S.C. § 2254,
this Court must determine whether a constitutional error in the
state court trial had a "substantial and injurious effect or
influence in determining the jury's verdict."   Fry v. Pliler,
551 U.S. 112, 116 (2007) (citing Brecht v. Abrahamson, 507 U.S.
619, 631 (1993); Foxworth v. St. Amand, 570 F.3d 414, 436 (1st
Cir. 2009).  When the federal court has "grave doubt as to
harmlessness," however, "the petitioner must win."   Foxworth, 570
F.3d at 436 (quoting O'Neal v. McAninch, 513 U.S. 432, 437
(1995)).

### 1.    The One Year Filing Requirement for Habeas Petitions

The Antiterrorism and Effective Death Penalty Act of 1996
("the Act") requires a petition for habeas corpus to be filed
within one year of the date on which "judgment became final by
the conclusion of direct review or the expiration of the time for
seeking such review."  Pub. L. 104-132 § 101, codified at 28
U.S.C. § 2244(d)(1)(A).  The time for seeking review includes the
ninety-day period in which a prisoner may file a petition for a

writ of certiorari.  Clay v. United States, 537 U.S. 522, 528 n.3
(2003); Derman v. United States, 298 F.3d 34, 40-42 (1st Cir.
2002); see S. Ct. R. 13(1).  The Supreme Judicial Court denied
the application for Further Appellate Review on September 10,
2009, at which point Dominguez had ninety days, or until December
9, 2009, to file a petition for a writ of certiorari with the
United States Supreme Court.  Sup. Ct. R. 13(1); Supreme Judicial
Ct. Denial (giving date of denial of application).

The final date of the limitations period is determined by
the anniversary date of when the time to seek review ended.
Lattimore v. Dubois, 311 F.3d 46, 53-54 (1st Cir. 2002).  Thus,
the limitations period under the act expired on December 9, 2010
and Dominguez failed to timely file his habeas petition.[3]

### 2.  Equitable Tolling

Dominguez argues he is entitled to equitable tolling of the
limitations period because of the delay caused by the prison in

_____

[3] Dominguez incorrectly calculated the limitations period to
expire on December 10, 2010.  Pet'r's Mem. 1.  This presumably is
a miscalculation of the ninety-day period for seeking a writ of
certiorari.  The attorney's miscalculation of a limitations
period, however, does not warrant equitable tolling.  Laurence v.
Florida, 549 U.S. 327, 336-37 (2007).  Dominguez also alleges
that the notice of denial sent by the Clerk of the Supreme
Judicial Court was dated September 12, 2009, two days after the
court's denial of his application for Further Appellate Review.
The delayed notice does not extend the limitations period as the
date of the actual decision governs the calculation of the
limitations period.  Donovan v. Maine, 276 F.3d 87, 92 (1st Cir.
2002).

14

returning his mail containing the habeas petitions to his attorney. The limitations period set forth in 28 U.S.C. § 2244(d) is subject to equitable tolling in certain instances. Holland v. Florida, --- U.S. ---, ---, 130 S. Ct. 2549, 2560 (2010). The First Circuit approaches equitable tolling on a "case-by-case basis, avoiding mechanical rules and favoring flexibility." Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 680 (1st Cir. 2011) (citing Holland, 130 S. Ct. at 2563). "To preserve the usefulness of statutes of limitations as rules of law, equitable tolling should be invoked only sparingly." Ramos-Martinez v. United States, 638 F.3d 315, 322 (1st Cir. 2011) (citations omitted) (internal quotation marks omitted).

Dominguez, as the party seeking equitable tolling, has the burden of establishing a basis for such relief. Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010) (citing Holland, 130 S. Ct. at 2562). In order to obtain equitable tolling, Dominguez must demonstrate that he has been pursuing his rights diligently, and that some extraordinary circumstance prevented him from filing timely. Holland, 130 S. Ct. at 2562 (reversing Court of Appeals decision that negligent attorney conduct can never warrant tolling absent bad faith, dishonesty, divided loyalty, or mental impairment on the lawyer's part). Although the analysis for equitable tolling is case-by-case, the First Circuit has at times listed factors that may be helpful in analyzing particular

circumstances.  E.g., Trapp v. Spencer, 479 F.3d 53, 61 (1st Cir. 2007).  In Trapp, the court offered six factors, including the two-part Holland test, which this Court will use in its analysis: "The petitioner's own diligence in pursuing habeas relief;" "Whether some extraordinary circumstance prevented the petitioner from making a timely filing;" "The petitioner's diligence in the pursuit of other post-conviction remedies and the process already afforded in the state system;" "Any prejudice to the prosecution that would result from tolling and a possible retrial;" "The fact that equitable tolling is not available in cases of dubious merit;" and "Whether or not the case is a capital case and whether or not the petitioner has been sentenced to death."  Trapp, 479 F.3d at 61 (citations omitted).  The latter five factors elaborate on whether extraordinary circumstances exist that merit equitable tolling.  As this is not a death penalty case, the last factor need not be discussed.

**B.  The Equitable Tolling Factors Applied**

**1.  Petitioner's Own Diligence**

In order to obtain equitable tolling, a habeas petitioner needs to show "reasonable diligence" in pursuing relief, Holland, 130 S. Ct. at 2565 (quoting Lonchar v. Thomas, 517 U.S. 314, 326 (1996)), rather than "maximum feasible diligence," id. (quoting Starns v. Andrews, 524 F.3d 612, 618 (5th Cir. 2008)).  In Holland, a prisoner repeatedly tried to contact his attorney

regarding the appeal of his criminal conviction, but the attorney would not respond. _Id._ at 2554-59. The prisoner pleaded with the attorney to submit his habeas petition before the limitations period expired. _Id._ at 2558-59. After a complaint to the local Bar Association, the attorney finally mailed a proposed habeas petition to the prisoner, albeit three months after the limitations deadline. _Id._ at 2559. The Supreme Court held that the prisoner had been reasonably diligent, because the prisoner attempted to contact his attorney several times during the appeals process, tried to have the attorney dismissed on the grounds of the attorney's unwillingness to respond or file a timely petition, and prepared his own pro se petition the same day he learned that the limitations period had expired. _Id._ at 2565.

In _Ramos-Martinez_ v. _United States_, the First Circuit explored equitable tolling for a 28 U.S.C. § 2255(f) petitioner.[4] 638 F.3d at 318. The First Circuit held that "reasonable diligence," like "extraordinary circumstances," depends on a totality of the circumstances, _id._ at 324 (citing _Trapp_, 479 F.3d at 61), but a petitioner does not have to "leave no stone unturned," _id._ at 323-24. Petitioner's own knowledge is a part of determining diligence. _Id._ (citing _Barreto-Barreto_ v. _United_

---

[4] Section 2255 of the Act refers to a prisoner held in federal custody while section 2244(d) refers to a prisoner held in state custody.

17

States, 551 F.3d 95, 101 (1st Cir. 2008); see also Morris v. Roden, Civil Action No. 10-12143-NMG, 2011 WL 5884262, *2 n.4 (D. Mass. Sept. 28, 2011) (stating that "equitable tolling is unavailable in cases of 'dubious merit'")(citing Lattimore, 311 F.3d at 55).

Here, Dominguez's diligence is rather pallid. The habeas petitions were not mailed to him until November 23, 2010, sixteen days before the expiration of the limitations period. Pet'r's Mem. 2. Thurber cites a number of reasons why the initial mailing was delayed. She attended continuing education courses about habeas corpus practice in late winter and early spring of 2010. Second Aff. ¶ 1(a). She began drafting the petition in the early summer of 2010. Id. ¶ 1(b). Another attorney advised her to file a simultaneous petition in New Jersey, where Dominguez was being housed, to avoid a dismissal for lack of jurisdiction. Id. ¶ 1(b). She realized she needed to be "sponsored" by an attorney admitted to practice before the New Jersey District Court. Id. ¶ 1(c). She consulted attorneys who practiced in New York or New Jersey concerning the matter, but apparently those attorneys did not respond. Id. ¶¶ 1(d)-(f). She later learned that she needed to undergo a separate process to practice in the District Court of Massachusetts despite being already admitted to practice in front of the First Circuit, and this process was completed some time in October 2010. Id. ¶

18

1(g).  All these events, therefore, seemingly pushed the initial

mailing of the habeas petitions to Dominguez to November 23,

2010.

These actions by Thurber do little to show Dominguez's own

diligence.  On July 21, 2009, Thurber sent a letter with a copy

of the Appeals Court affirmation of his conviction.  Second Aff.,

Ex. at 4.  Dominguez, in an undated letter, replied that he

received notification of the affirmation.[5]  Id. at 5.  With the

ninety-day certiorari period ending on December 9, 2010, there

was ample time for Dominguez to inquire about a habeas petition.

Thurber sent a letter to him dated September 13, 2010 regarding

an "update" to the status of Dominguez's habeas petition, to

which Dominguez sent a reply dated just four days later.  Id. at

6-7.  Based on this correspondence, the Court determines that

Dominguez was engaged in preserving his habeas rights.

While Dominguez does not show the same level of diligence as

the petitioners in Holland and Ramos-Martinez, the standard

required of Dominguez is "reasonable diligence" and this Court

concludes Dominguez has met that standard here, albeit barely.

## 2.  Extraordinary Circumstances

Dominguez next must show that extraordinary circumstances

---

[5] Although Thurber has cited Dominguez's difficulties with
English as a hindrance to the habeas process, Second Aff. ¶ 1(h),
there are handwritten letters in English appearing to come from
Dominguez.  Second Aff., Ex. at 2, 5, 7.

existed which caused his petition to be filed untimely.  <u>Holland</u>,
130 S. Ct. at 2562.  "The equitable tolling doctrine extends
statutory deadlines in extraordinary circumstances for parties
who were prevented from complying with them through no fault or
lack of diligence of their own."  <u>Neves</u> v. <u>Holder</u>, 613 F.3d 30,
36 (1st Cir. 2010).  Unfortunately for petitioners, that does not
include attorney errors, as the First Circuit has held that "a
garden variety claim of excusable neglect . . . does not warrant
equitable tolling."  <u>Drew</u> v. <u>MacEachern</u>, 620 F.3d 16, 23 (1st
Cir. 2010) (quoting <u>Holland</u>, 130 S. Ct. at 2564) (internal
quotation marks omitted) (stating that "a simple 'miscalculation'
by attorney that leads to missing a deadline, does not warrant
equitable tolling").  At times, petitioners "must bear the risk
of attorney error."  <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 752-53
(1991) (internal quotation marks omitted).  <u>But see</u> <u>Holland</u>, 130
S. Ct. at 2563 (distinguishing <u>Coleman</u> and concluding that
<u>Coleman</u> does not require a per se rule regarding attorney error).
Of course, "egregious attorney neglect could constitute an
extraordinary circumstance."  <u>Drew</u>, 620 F.3d at 23 (1st Cir.
2010) (citing <u>Holland</u>, 130 S. Ct. at 2564).  In <u>Holland</u>, the
Supreme Court found that even negligent error could potentially
merit equitable tolling as extraordinary circumstances.  <u>Holland</u>,
130 S. Ct. at 2554.

In <u>Donovan</u> v. <u>Maine</u>, 276 F.3d 87 (1st Cir. 2002), a petition

for habeas corpus was filed twelve days after the limitations period had expired. Id. at 90. The petitioner claimed that a delay in the mail caused a transcript he requested to arrive later than expected, and in turn caused a delay in his filing the habeas petition. Id. at 93. The court criticized the petitioner's actions because the petitioner still had approximately seven weeks remaining to file the habeas petition once he received the transcript, yet the petitioner did not file it until twelve days after the limitations period ran. Id. at 93-94. Because the petitioner had "dawdled" by not filing the habeas petition during the remaining seven weeks and effectively contributed to the late filing, he was not entitled to equitable tolling of the limitations period. Id. at 94.

The Second Circuit has stated that it is "aware of no case holding that a delay occasioned by the normal course of the mail, as lengthened by a regularly scheduled holiday, constitutes an 'extraordinary' circumstance for purposes of equitable tolling." Saunders v. Senkowski, 587 F.3d 543, 550 (2d Cir. 2009). The Saunders court thus declined to equitably toll the filing date of a habeas petition. Id. (affirming district court decision that a holiday mail delay leading to habeas petition being filed four days late was not extraordinary circumstances).

Here, although Thurber was not admitted to practice in front of this Court until October 2010, the petition could have been

prepared and mailed much sooner.  Second Aff. ¶¶ 1(g)-2.  This is

an indication of "dawdling," albeit less than the Donovan

petitioner exhibited.  276 F.3d at 94.  The petitions were

initially mailed to Dominguez immediately preceding the

Thanksgiving weekend.  Pet'r's Mem. 2.  Even assuming Thurber was

admitted to practice before this Court on the last day of

October, there would still have been a three week gap between her

admittance and her initial mailing of the habeas petition.

Granted, the sixteen day period between the initial mailing date

and the expiration of the limitation period here is longer than

the four day period in Saunders.  See Saunders, 587 F.3d at 550.

Although the delay that resulted from the petition being returned

to the attorney was out of Dominguez's control, the circumstances

of this case are more akin to the petitioners in Donovan and

Saunders than they are to the petitioners in Holland and Ramos-

Martinez.  Accordingly, the circumstances are unlikely to be

considered extraordinary.  A review of the additional factors

proposed in Trapp sheds more light on whether equitable tolling

is appropriate in this case.  See Trapp, 479 F.3d at 61.

### a.  Diligence in Pursuing State Remedies

To fulfill the exhaustion requirement under 28 U.S.C. §

2254, Dominguez's claims must have been "adjudicated on the

merits," id., and presented "fairly and recognizably" to the

highest state court, Clements v. Maloney, 485 F.3d 158, 162 (1st

Cir. 2007). Dominguez's first claim for a Confrontation Clause violation appears to be sufficiently exhausted. See Appeals Ct. Decision 3-4. The issue cites a federal constitutional right. Id. Dominguez directly appealed the issue to the Appeals Court, which decided the issue on the merits, and the Supreme Judicial Court chose to deny his Application for Further Review. See id.; see also Supreme Judicial Ct. Denial.

Dominguez's second claim of a Due Process violation also appears to be sufficiently exhausted. See Habeas Pet. 8-9. Although the state court decisions make no mention of federal law, see Appeals Ct. Decision 7-8, "a state court need not cite or even be aware of [Supreme Court] cases" to constitute a decision under § 2254(d). Harrison v. Richter, --- U.S. ---, ---, 131 S. Ct. 770, 784 (2011) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-85.

This Court will accept for purposes of analysis that Dominguez's Brady claim was presented to the state courts, as he asserts in his habeas petition. Habeas Pet. 8-9. As a state court need not cite federal nor even state law in its analysis, the proper issue for habeas review under section 2254 is whether

the state court's result and reasoning contradicts clearly-established Supreme Court precedent. Junta v. Thompson, 615 F.3d 67, 73 (1st Cir. 2010) (citation omitted); see also Early v. Packer, 537 U.S. 3, 8 (2002).

Here, the state courts made no citation to federal law. Appeals Ct. Decision 7-8; see Junta, 615 F.3d at 71 (noting that federal courts "look through to the last reasoned decision to determine the basis for the court's holding" (quoting Malone v. Clarke, 536 F.3d 54, 63 n.6 (1st Cir. 2008)). The review of the state courts' decision, however, rests on the courts' result and reasoning. Junta, 615 F.3d at 73 (citation omitted). Although citations to applicable state or federal law would be preferable in a court opinion, "[i]t is not [this Court's] function, however, to grade a state court opinion as if it were a law school examination." Rashad v. Walsh, 300 F.3d 27, 45 (1st Cir. 2002) (noting disapproval of a Massachusetts Appeals Court decision that did not discuss a factor important to the petitioner). Here, where the state court's decision does not cite federal law or rest on state procedural grounds, this Court presumes that Dominguez's claim was adjudicated on the merits. Harrison, 131 S. Ct. at 784-85. Thus, Dominguez appears to have fulfilled the exhaustion requirement under section 2254.

### b.   Prejudice to the Prosecution

This Court may also consider possible prejudice to the

prosecution from equitable tolling.  <u>Trapp</u>, 479 F.3d at 61.

Federal law requires habeas petitioners to exhaust their state

remedies, and also provides a one-year statute of limitations for

filing from the time that direct review expired.  28 U.S.C. §

2244, § 2254.  Dominguez is entitled to the entire statutory one

year, and had his petition been filed on the last possible date,

this Court would not hold that against him.  Here, the petition

was filed one day late after the due date, and as a result there

would not be any prejudice to the prosecution as a result of

equitable tolling.

### c.   The Merits

#### i.   The Alleged Confrontation Clause Violation

Dominguez asserts that admitting in evidence the autopsy

report performed by Dr. Philip and the testimony by Dr.

Flomenbaum constituted a violation of the Confrontation Clause.

Habeas Pet. 6.  This Court must review the impact of an alleged

constitutional error in a petition filed under 28 U.S.C. § 2254

under the "substantial and injurious effect" standard set forth

in <u>Brecht</u>, 507 U.S. at 623, regardless of whether the state

appellate court recognized the constitutional error and reviewed

it under the "'harmless beyond a reasonable doubt'" standard set

forth in <u>Chapman</u> v. <u>California</u>, 386 U.S. 18, 24 (1967).  <u>See</u> <u>Fry</u>

551 at 121-22.

"The burden of proving harmlessness remains, however, with

the government." <u>Moore</u> v. <u>Ponte</u>, 924 F. Supp. 1281, 1294 (D.

Mass. 1996) (Gertner, J.) (citing <u>Gilday</u> v. <u>Callahan</u>, 59 F.3d

257, 268 n.11 (1st Cir. 1995); <u>Brecht</u>, 507 U.S. at 639-641).  The

Attorney General in this case did not file timely briefs on the

merits as ordered.  <u>See</u> ECF No. 14; Electronic Order, March 15,

2012.  At the state level, however, they appear to have met this

burden.  Under 28 U.S.C. § 2254(e)(1), "a determination of a

factual issue made by a State court shall be presumed to be

correct."  "The petitioner bears the burden of overcoming that

presumption by providing 'clear and convincing evidence.'"  <u>Teti</u>

v. <u>Bender</u>, 507 F.3d 50, 57 (1st Cir. 2007) (quoting 28 U.S.C. §

2254(e)(1)).  "The 'presumption of correctness is equally

applicable when a state appellate court, as opposed to a state

trial court, makes the finding of fact.'"  <u>Id.</u> at 58 (quoting

<u>Norton</u> v. <u>Spencer</u>, 351 F.3d 1, 6 (1st Cir. 2003)).

Given the Act's strong deference to factual findings by

state courts, the Court will rely in this case on those

conclusions, although this approach is not commendable.  The

Court takes this step not to shift the burden on harmlessness to

Dominguez, but because the facts alleged by Dominguez, even if

true, do not state a claim for which habeas relief may be

granted.  <u>See</u> <u>Companonio</u> v. <u>O'Brien</u>, No. 09-2428, 2012 WL 687979,

at *8 (1st Cir. Mar. 5, 2012) (noting that a habeas judge must

consider whether an evidentiary hearing could enable an applicant

to prove the petition's factual allegations and lead to relief before granting the hearing); <u>Delong</u> v. <u>Pepe</u>, No. 10-2075, slip op. at 1 (1st Cir. Dec. 28, 2011) (affirming dismissal of untimely habeas claim after examining the merits).[6]

In this case, the Appeals Court agreed with Dominguez that the autopsy report was admitted erroneously as testimonial hearsay evidence under <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36 (2004). Appeals Ct. Decision 3 (citing <u>Commonwealth</u> v. <u>Nardi</u>, 452 Mass. 379, 394 (2008)). Dr. Flomenbaum's testimony was "limited to reporting what was contained within 'the four corners' of the autopsy report," <u>id.</u> at 3 n.1, and neither the autopsy report nor Dr. Flomenbaum's testimony based on the report went to establishing the cause of death, <u>id.</u> at 4.

Instead, the autopsy report "consisted of entirely cumulative or insignificant data," such as the "victim's height and weight, the weight of various organs, and the positions of identifying marks." <u>Id.</u> at 4-5. The autopsy report did list a stab wound to the victim's right shoulder as the cause of death, but the victim's death had been "independently established by the death certificate" and the cause of death was not in dispute. <u>Id.</u> at 4.

---

[6] The government's burden of proving harmlessness, <u>Moore</u>, 924 F. Supp. at 1294, is distinct from Dominguez's burden of persuasion on equitable tolling, <u>Donovan</u>, 276 F.3d at 93, or Dominguez's burden to overcome the presumption of correctness of the state court's factual determination, <u>Teti</u>, 507 F.3d at 57.

Furthermore, Dominguez argues he could have asked Dr. Philip whether the injuries were consistent with Dominguez's version of the events and that Dr. Philip may have made "additional observations" that were not in the autopsy report had he testified. Id. at 4 n.2. There was no evidence, however, to support this contention. Id.

Dominguez's first claim would almost undoubtedly fail on the merits. Given the current stringent standard for habeas relief, Dominguez's pleadings do not raise significant doubts as to harmlessness of the error at trial. Compare Habeas Pet. 6 with Nardi v. Pepe, Civil Action No. 09-12166-RWZ, 2011 WL 576601, at *4 (D. Mass. Feb. 8, 2011) (Zobel, J.) (holding that improperly admitted duplicative testimony as to cause of death did not have substantial and injurious influence). Dominguez does not argue that the cause of death was disputed or that improper testimony misled the jury. Instead, Dominguez's trial defense was that he stabbed the victim in self-defense, and as the Appeals Court noted, the cause of death was supported by properly admitted photographic evidence. Appeals Ct. Decision 4. While it is regrettable that there was constitutional error at his trial, the error does not appear to have altered the verdict, and does not rise to the level of "substantial and injurious effect or influence" on the jury's verdict. See Foxworth, 570 F.3d at 436. Therefore, Dominguez's claim of unlawful incarceration due to the

Confrontation Clause violation is of extremely dubious merit.

## ii.  The Alleged Due Process Violation

Dominguez asserts that the prosecutors withheld evidence that would have corroborated his statements to the police and would have bolstered his claims of self-defense.  Habeas Pet. 8. This, Dominguez asserts, is a violation of <u>Brady</u>, 373 U.S. at 87. Habeas Pet. 8.

To establish a <u>Brady</u> violation, a petitioner must demonstrate three components: "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 263, 281-82 (1999); <u>see also</u> <u>Zuluaga</u> v. <u>Spencer</u>, 585 F.3d 27, 30 (1st Cir. 2009) (citation omitted).  Assuming that his allegations suffice for the first two components, Dominguez would still need to show prejudice, or in other words that "the suppressed evidence was material to guilt or punishment," <u>Zuluaga</u>, 585 F.3d at 30 (quoting <u>Conley</u> v. <u>United States</u>, 415 F.3d 183, 188 (1st Cir. 2005)).

To demonstrate prejudice, a petitioner must show that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense."  <u>Strickler</u>, 527 U.S. at 289 (citation omitted).  Put another way, the petitioner must show that the

suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 290 (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)).

Dominguez argues that had he known of the victim's son's conviction, his claim of self-defense would have been bolstered because it would have provided an explanation for the victim's "unprovoked attack" on Dominguez.  Habeas Pet. 8.  The motion judge stated that there was nothing to support Dominguez's theory and that "it was unlikely to have had any impact on the jury" and denied the motion for a new trial without holding an evidentiary hearing.  Superior Ct. Decision 1-2.  The Appeals Court added that "no substantial issue [was] raised by the motion or affidavits."  Appeals Ct. Decision 7-8.  In addition, the Appeals Court noted that although Dominguez argued that "crucial strategic trial decisions would have been altered had this information been known," Dominguez "ha[d] not introduced any affidavit or other evidence indicating that those efforts would have been successful." Id. at 8 n.5 (citation omitted).  In this collateral challenge, Dominguez has not filed additional briefs or affidavits arguing this issue, nor provided this Court with the briefs submitted to the state courts.

There may be a possibility that the result of the trial would have differed if Dominguez was privy to this evidence, but such possibility falls short of the reasonable probability

standard required by the Supreme Court. <u>Strickler</u>, 527 U.S. at 291. Dominguez fails to bear the burden of establishing a basis for relief, <u>Riva</u>, 615 F.3d at 39, and accordingly, his claim of unlawful incarceration due to a Due Process violation is also of dubious merit, <u>see</u> Habeas Pet. 8.

## V.   CERTIFICATE OF APPEALABILITY

This Court may consider whether to grant a Certificate of Appealability <u>sua sponte</u>. <u>Teti</u>, 507 F.3d at 56. To obtain a Certificate of Appealability, "a habeas prisoner must make a substantial showing of the denial of a constitutional right."[7] <u>Slack</u> v. <u>McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining the requirements for a "substantial showing"). As Dominguez's Sixth Amendment right to be confronted with witnesses against him was violated, the Court certifies his first habeas claim. Due to the intricacies of this case, and that counsel missed timely filing by a single day, perhaps due to no fault of her own, this Court certifies Dominguez's second habeas claim. <u>Id.</u>

---

[7] This standard is not particularly stringent. A habeas claim could be "considered 'debatable' even if every reasonable jurist would agree that the petitioner will not prevail." <u>Garcia</u> v. <u>Russo</u>, Civil No. 06-10614-NMG, 2012 WL 242867, at *1, (D. Mass. Jan. 23, 2012) (Gorton, J.) (citing <u>Miller-El</u> v. <u>Cockrell</u>, 537 U.S. 322, 338 (2003)).

## VI. CONCLUSION

After consideration of the relevant factors, Dominguez's untimely habeas petition does not warrant equitable tolling.[8] Therefore, this Court GRANTS the government's motion to dismiss, ECF No. 5.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[8] Dominguez did not allege that the return of mail and subsequent delay were intentional or even negligent acts by the correctional facility, otherwise this case may well have been equitably tolled. See Order, ECF 14 (requesting supplemental briefs including on the issue of whether Dominguez alleged that Northern State Prison negligently or intentionally returned the November 23, 2010 envelope).